```
                IN THE UNITED STATES DISTRICT COURT

                    FOR THE DISTRICT OF HAWAII

MICHAEL S. McCORMACK,        )   CIVIL NO. 10-00293 SOM/KSC
                             )
          Plaintiff,         )   ORDER GRANTING IN PART,
                             )   DENYING IN PART DEFENDANT
     vs.                     )   CITY AND COUNTY'S MOTION FOR
                             )   SUMMARY JUDGMENT
CITY AND COUNTY OF HONOLULU, )
ANDY LAZANO,                 )
PRESTON PACHECO,             )
JOHN DOES 1-10,              )
                             )
          Defendants.        )
_____)
```

### ORDER GRANTING IN PART, DENYING IN PART
### DEFENDANT CITY AND COUNTY'S MOTION FOR SUMMARY JUDGMENT

I.    INTRODUCTION.

Plaintiff Michael S. McCormack ("McCormack") alleges that Defendants City and County of Honolulu (the "City"), Honolulu Police Department Officers Andy Lazano and Preston Pacheco are liable for violations of constitutional rights pursuant to 42 U.S.C. § 1983. McCormack claims that Officers Lazano and Pacheco used excessive force against him. McCormack also states that the City is liable for deliberate indifference in the training and supervision of various police officers including Officers Lazano and Pacheco. The City has moved for summary judgment with respect to all remaining claims against it.

McCormack fails to present evidence regarding alleged inadequate police training and supervision, and fails to address other claims asserted against the City. The court grants the City's motion for summary judgment with respect to all claims

except the respondeat superior claim.

II.     BACKGROUND FACTS.

Officer Preston Pacheco has been with the Honolulu Police Department ("HPD") for the City and County of Honolulu since September 1, 2005. See Declaration of Preston Pacheco ("Pacheco Decl.") ¶ 1, ECF No. 69, Ex. 2. The incident that is the subject of this action occurred in the afternoon of May 18, 2008.

At approximately 12:13 p.m., Officer Pacheco responded to a report of an Unauthorized Entry into Motor Vehicle ("UEMV") in the parking lot of the Island Pacific Academy on 909 Haumea Street. See Pacheco Decl. ¶ 3. At approximately 12:28 p.m., Officer Pacheco spoke with Aileen Hershey ("Hershey"), who said that her purse had been stolen from her unlocked vehicle. See id. ¶ 4. Hershey had walked 50 yards from her car to pick up her children and had not been watching her vehicle for two minutes. See id. When she returned, Hershey discovered that her purse was missing from the front seat where she had left it and concluded that it had likely been stolen. See id. Hershey described her purse as large and bulky. See id. ¶ 5.

Officer Pacheco received a dispatch from Oahu Transit Services ("OTS"), which operates Honolulu's bus system, stating that a possible suspect was on a bus on Haumea Street. See Pacheco Decl. ¶ 5. Pacheco met Hershey at the bus stop

nearest that area.  Hershey said that someone had seen an adult male wearing a black top and blue jeans walking in the area where the incident had occurred, and that this male might be the suspect.  See id.  Hershey added that she had approached the bus stop and had seen a man wearing a black top and blue jeans looking into a white "KB Toy Store" plastic bag.  See id.  She stated that, as she walked in his direction, the man appeared to hesitate, rolled the plastic bag closed, stood up, and got on the next OTS bus.  See id.

McCormack and his friend Joseph Diaz ("Diaz") had gotten on the bus to go home.  See Declaration of Michael McCormack ("McCormack Decl.") ¶ 7, ECF No. 73, Ex. A.  McCormack suffers from epilepsy, see id. ¶ 3, and has been "determined to be totally and permanently disabled by Social Security administration."  See ECF No. 74, Ex. 5.  On the day of the incident, McCormack was using a cane for support and had his left leg in an air cast.  See McCormack Decl. ¶ 21.

After speaking with Hershey, Officer Pacheco got on the bus and saw McCormack, noting that he was wearing a black jacket and blue jeans and had a "KB Toy Store" plastic bag.  See Pacheco Decl. ¶ 6.  Officer Pacheco went up to McCormack and thought he looked worried.  See id.  Officer Pacheco explained to McCormack why he was being questioned and told him that he matched the description of a possible suspect.  See id.  Officer Pacheco

3

claims that he did not touch McCormack but did pick up McCormack's plastic bag to see if anything was inside. See id. Officer Pacheco found only empty plastic bottles and aluminum cans inside. See id.

HPD Officer Brian Soderman ("Officer Soderman") arrived at the scene and talked with Sergeant Kyle Yonemura and Officer Pacheco inside the OTS bus. See Declaration of Brian Soderman ("Soderman Decl.") ¶ 4, ECF No. 69, Ex. 3. When Officer Pacheco pointed to McCormack, Officer Soderman noticed a large bulge protruding from under McCormack's jacket around his waistline. See id. ¶ 5. Officer Soderman went over to McCormack and told the circumstances of the UEMV case. See id. Officer Soderman frisked McCormack for possible weapons or fruits of the crime. See id. ¶ 6. Officer Soderman did not find weapons or anything indicating that McCormack had Hershey's purse. See id.

McCormack and the officer Defendants offer conflicting stories about the force that was used on McCormack. While unclear, McCormack appears to be claiming that Officer Andy Lazano hit him in the chest and squeezed his nipple area. See McCormack Decl. ¶ 12. Both McCormack and Diaz claim that an officer told McCormack that the officer was going to handcuff and arrest him for shoplifting. See id.; Declaration of Joseph Diaz ("Diaz Decl.") ¶¶ 15-16, ECF No. 73-3. McCormack adds that the "officers were twisting me around trying to handcuff me in the

4

small space and severely bruised my chest in doing so." Id. ¶ 14. McCormack states that the officers "tried to pull me out of my seat" and only released him when they realized he had "started having an epileptic seizure." See McCormack Decl. ¶ 13. By contrast, Officer Soderman and Officer Pacheco claim that they never used unnecessary or excessive force on McCormack. See Soderman Decl. ¶¶ 8-10; Pacheco Decl. ¶¶ 8-9, 11.

When the officers realized they had the wrong suspect, they left, and Officer Yonemura allegedly "grabbed" McCormack's plastic bag and "threw it 5-6 feet away . . . as he was walking out of the bus door." McCormack Decl. ¶ 16; see also Diaz Decl. ¶ 21. Diaz adds that the white KB Toy Store bag was in a black plastic bag, that Officer Yonemura took the KB Toy Store bag out of the black bag, and that he emptied the KB Toy Store bag on the floor. See Diaz Decl. ¶ 19. Officer Soderman claims that Officer Yonemura never touched McCormack's bag. See Soderman Decl. ¶ 7. Diaz says that the officers did not apologize for having grabbed McCormack. See Diaz Decl. ¶ 20. According to Diaz, McCormack "was shaking and crying when the officers left the bus and Officer Yonemura was teasing him about scaring him so badly." Diaz Decl. ¶ 25. Officer Soderman's version is that he thanked McCormack for his cooperation and left. See Soderman Decl. ¶ 7.

The following day, McCormack allegedly "started feeling

pain in [his] left upper chest area where officer Lazano had grabbed [him]." McCormack Decl. ¶ 18. McCormack says he continues to have pain in his left chest area and has sought medical treatment. See id. ¶ 23; ECF No. 74, Exs. 5, 6, 7.

III.    PROCEDURAL HISTORY.

On May 18, 2010, McCormack filed this action. See ECF No. 1. On September 27, 2010, Magistrate Judge Kevin S.C. Chang issued a Rule 16 Scheduling Order, which provided that "[a]ll motions . . . to amend the pleadings shall be filed by April 15, 2011." See ECF No. 18. On January 25, 2011, this court issued an Order Partially Granting and Partially Denying Defendant City and County's Motion to Dismiss. See ECF No. 31. The court granted McCormack leave to amend his Complaint by February 15, 2011, to cure the defects noted in the Order. See id. McCormack failed to amended the Complaint by the deadline.

On April 14, 2011, McCormack filed a Motion to Amend Complaint only to name additional defendants. See ECF No. 43. Magistrate Judge Chang denied the motion to amend as futile because McCormack had made no attempts to cure the defects identified in this court's previous order. See ECF No. 53. However, in the Order, Magistrate Judge Chang gave McCormack another opportunity to amend his Complaint by June 3, 2011. See id. McCormack again failed to file an Amended Complaint by the deadline. Plaintiff's counsel states that "[n]o mention of

further leave to amend by June 3, 2011 was heard by Plaintiff's counsel at the May 20, 2011 hearing." See Opp'n at 6, ECF No. 75.  Even if this were true, the June 3, 2011, extension was clearly laid out in Magistrate Judge Chang's Order Denying Plaintiff's Motion to Amend Complaint.  See Order at 9 ("Plaintiff is permitted one more opportunity to file a motion to amend as a matter of course.  He must do so by **June 3, 2011**.")

On June 15, 2011, the City filed the present Motion for Summary Judgment.  See ECF No. 68.  McCormack filed an untimely Opposition on July 6, 2011.  McCormack also filed his concise statements of facts with accompanying exhibits and declarations, but failed to include the required tabs in these filings.  See Local Rule 7.7 ("Courtesy copies must comply with all Local Rule requirements, including the tabbing of exhibits and declarations or affidavits."); Local Rule 10.2(d) ("Original documents and courtesy copies of exhibits, declarations, and/or affidavits shall have appropriately labeled tabs.").  McCormack's counsel also failed to give the court courtesy copies of the Opposition even after being called by court staff.

The following claims remain against the City: (1) a § 1983 claim alleging deliberate indifference in violation of the Fourteenth Amendment (Count IV); (2) false arrest (Count V); (3) respondeat superior (Count VIII); and (4) punitive damages (Count IX).

IV.     STANDARD OF REVIEW.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court "the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. Catrett, 477 U.S. 317, 323 (1986)); accord Miller v. Glenn Miller Prods., Inc., 454 F.3d 975, 987 (9th Cir. 2006). "A fact is material if it could affect the outcome of the suit under the governing substantive law." Miller, 454 F.3d at 987. When the moving party bears the burden of proof at trial, that party must satisfy its burden with respect to the motion for summary judgment by coming forward with affirmative evidence that would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Id. (quoting C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc., 213 F.3d 474, 480 (9th Cir. 2000)). By contrast, when the nonmoving party bears the

burden of proof on one or more issues at trial, the party moving for summary judgment may satisfy its burden with respect to those issues by pointing out to the court an absence of evidence from the nonmoving party. Miller, 454 F.3d at 987.

When the moving party meets its initial burden on a summary judgment motion, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial." Id. The court must not weigh the evidence or determine the truth of the matter but only determine whether there is a genuine issue for trial. See Balint v. Carson City, 180 F.3d 1047, 1054 (9th Cir. 1999). On a summary judgment motion, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." Miller, 454 F.3d at 988 (quotations and brackets omitted).

Summary judgment may also be appropriate when a mixed question of fact and law involves undisputed underlying facts. See EEOC v. UPS, 424 F.3d 1060, 1068 (9th Cir. 2005); Colacurcio v. City of Kent, 163 F.3d 545, 549 (9th Cir. 1998).

V.  ANALYSIS.

   A.  Counts I (Fourth Amendment under 42 U.S.C. § 1983), VI (Wanton and Reckless Conduct), and VII (Assault & Battery)

The City asks the court to dismiss Counts I, VI, and VII with prejudice. This court had dismissed these counts in its

previous Order, but gave McCormack leave to amend them. See McCormack v. City & Cnty. of Honolulu, 762 F. Supp. 2d 1246, 1251 (D. Haw. 2011). McCormack has failed to amend after two opportunities and does not oppose the City's motion with respect to these claims. Accordingly, the court dismisses Counts I, VI, and VII.

> B. Count IV (§ 1983 - Deliberate Indifference by City in Violation of Fourteenth Amendment)

In Count IV, McCormack's surviving 42 U.S.C. § 1983 claim against the City is based on the City's deliberate indifference in the supervision, training, and control of its police officers in violation of the Fourteenth Amendment. See Compl. ¶ 27.

> Section 1983 provides, in part:
>
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The Supreme Court has held that a municipality cannot be held liable pursuant to § 1983 under a theory of respondeat superior liability. Monell v. Dep't of Social Servs., 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); see also City

10

of Canton, Ohio v. Harris ("City of Canton"), 489 U.S. 378, 385, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989) ("Respondeat superior or vicarious liability will not attach under § 1983."). Instead, for a municipality to be found liable for a § 1983 claim, a plaintiff must prove

> that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.'

Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (internal citation omitted). In other words, municipal liability under § 1983 may be premised upon an officially promulgated policy; a custom or persistent practice; deliberately indifferent training that is the proximate cause of the violation of the plaintiff's federally protected rights; or a single decision by an official with final decision-making authority. See City of Canton, 489 U.S. 378, 109 S. Ct. 1197, 103 L. Ed. 2d 412; St. Louis v. Praprotnik, 485 U.S. 112, 108 S. Ct. 915, 99 L. Ed. 2d 107 (1988); Pembaur v. Cincinnati, 475 U.S. 469, 478, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986); Monell, 436 U.S. at 695. In addition, a claim based on a custom or policy must be based on a custom or policy that is the "moving force behind the

constitutional violation." Dietrich v. John Ascuaga's Nugget, 548 F.3d 892, 900 (9th Cir. 2008) (quoting Monell, 436 U.S. at 694); see also Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

McCormack alleges that the City violated 42 U.S.C. § 1983 by failing and refusing to properly train, supervise, and/or control the officers. The City argues that McCormack has no evidence that HPD training or supervision was in fact deficient. This court agrees. McCormack is unable to identify or produce evidence of a specific deficiency in HPD's training program or supervision of its officers. See Mot. at 10.

"[T]he inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388. In response to McCormack's allegation of inadequate police training, the City has come forward with evidence establishing that HPD officers undergo training on the use of force, and that Officers Pacheco and Soderman are aware of HPD policies on the use of excessive force. See Pacheco Decl. ¶ 12; Soderman Decl. ¶ 13.

12

The City submits the Declaration of Richard H. Weitzel, a certified instructor for the Honolulu Police Academy who has worked with the Training Division of HPD since 2007. See Declaration of Richard H. Weitzel ("Weitzel Decl.") ¶ 3, ECF No. 69-1. According to Weitzel, every HPD officer must complete recruit training at the Honolulu Police Academy that consists of training in the laws of arrest and in what constitutes probable cause. See id. ¶¶ 4-5. Every officer must also take a Control and Arrest Tactics Course, which involves the study of the use of force and the application of reasonable force in varying circumstances. See id. ¶¶ 7-8. Moreover, HPD officers are trained to use force only as a means to control a suspect or arrestee, or in self-defense, and are admonished never to employ force as a means of punishment or for any other purpose. See id. ¶ 14. Furthermore, HPD policy forbids unreasonable or excessive force, and officers can be disciplined or prosecuted if in violation of this policy. See id. ¶ 12.

In opposition, McCormack has failed to come forward with evidence regarding inadequate training of HPD officers. McCormack claims that the Declarations of McCormack and Diaz along with eye witness statements from Brandon Moniz and John Shigemasu establish evidence of a lack of training. See Opp'n at 7. But none of those declarations or statements indicates that the officers' training was inadequate.

To support his "deliberate indifference" claim, McCormack offers only conclusory statements without supporting evidence. McCormack also argues that the numerous lawsuits against the City demonstrate that the written policy against unreasonable force was not being enforced. See Opp'n at 9. "A list of complaints against police officers, without more, is insufficient to create an issue of fact regarding the City's policy of inadequately investigating or disciplining its police officers." Bartolome v. City & Cnty. of Honolulu, Civ. No. 06-00176 SOM/LEK, 2008 WL 2736016, at *9 (D. Haw. July 14, 2008). McCormack alleges that the City knows its officers use excessive force, yet has failed to train or discipline officers using excessive force on citizens. See Opp'n at 10. McCormack complains that the only training given to officers is when they are first hired as part of the training recruit program. See Opp'n at 11. Weitzel, however, states that HPD officers are frequently given in-service training on laws and other officer safety issues. See Weitzel Decl. ¶ 9. Furthermore, all HPD officers are required to be familiar with the laws governing the use of force and are periodically apprised of, and trained in, developments in this area of the law. See id. ¶ 10.

McCormack has no evidence that any purported deficiency amounts to "deliberate indifference" on the City's part, or that such deficiency was the "moving force" behind the alleged

constitutional violation. See id. While McCormack does highlight a question of fact as to whether the officers used excessive force on him, he does not demonstrate that the alleged officer conduct resulted from deliberate indifference regarding police training. The Supreme Court has stated,

> That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program. . . . Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better training. . . . Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program. . . . And plainly, adequately trained officers occasionally make mistakes; the fact that they do says little about the training program. . . .
>
> Moreover, for liability to attach . . . [the plaintiff] must still prove that the . . . injury [would] have been avoided had the employee been trained under a program that was not deficient in the identified respect[.]

City of Canton, 489 U.S. at 390-92, 109 S. Ct. at 1206 (1989).

Many of the McCormack's allegations are unsupported by the admissible evidence required by Rule 56(e)(2) of the Federal Rules of Civil Procedure. Moreover, many of McCormack's allegations are not probative of whether or not HPD's allegedly inadequate training was the moving force behind the alleged constitutional violations. To defeat summary judgment, a nonmoving party must set forth "significant probative evidence"

15

in support of its position. T.W. Elec. Serv., 809 F.2d at 630. McCormack has not come forward with probative evidence demonstrating inadequate training. As a result, the court grants summary judgment in favor of the City with respect to this allegation.

### C. Count V (False Arrest)

The essential elements for false arrest are (1) the detention or restraint of one against his or her own will, and (2) the unlawfulness of such detention or restraint." Reed v. City & Cnty. of Honolulu, 76 Haw. 219, 230, 873 P.2d 98, 109 (1994) (internal quotation marks and brackets omitted).

However, "where an arrest or detention is effected without a warrant, the existence of probable cause to arrest is an affirmative defense to an action for false imprisonment." Towse v. State, 64 Haw. 624, 635, 647 P.2d 696, 704 (1982).

McCormack does not even address the false arrest claim in his Opposition. Even if McCormack satisfied the elements for false arrest, the officers had probable cause to believe that McCormack was a possible suspect in the theft of Hershey's property. See Mot. at 13. In his declaration, Officer Soderman states that he patted McCormack down because McCormack was wearing a jacket with a large visible bulge and Officer Soderman was concerned that McCormack might have a weapon. See Soderman Decl. ¶¶ 5-6. McCormack does not oppose the City's motion with

respect to the false arrest claim. Accordingly, the court grants summary judgment to the City with respect to Count V.

D. Count VIII (Respondeat Superior)

As stated in this court's previous Order, McCormack appears to base his respondeat superior claim on Officer Lazano's allegedly malicious assault and battery. Under Hawaii law, a municipality can have respondeat superior liability for torts maliciously committed by an employee acting within the scope of his authority. Wong-Leong v. Hawaiian Indep. Refinery, Inc., 76 Haw. 433, 439, 879 P.2d 538, 543 (Haw. 1994); Lane v. Yamamoto, 2 Haw. App. 176, 178, 628 P.2d 634, 636 (Haw. Ct. App. 1981).

McCormack states that officers "twist[ed]" him around while "trying to handcuff" him, resulting in "severe[] bruises" to his chest. See McCormack Decl. ¶ 14. Diaz claims that the officer "pull[ed]" McCormack off his seat while trying to handcuff him. See Diaz Decl. ¶ 17. Officer Lazano allegedly "hit" McCormack's chest with the palm of his hands and "squeezed" McCormack's nipple area. See id. ¶¶ 12, 18. The City has not offered any declaration or affidavit from Officer Lazano, although Officers Pacheco and Soderman claim that they never "pulled Plaintiff" or "threaten[ed] him in any manner." See Pacheco Decl. ¶ 8; Soderman Decl. ¶ 8. A question of fact remains as to whether an officer assaulted and battered McCormack. Accordingly, the court DENIES the City's motion for

17

summary judgment with respect to the respondeat superior claim.

### E. Count IX (Punitive Damages)

The City is not liable for punitive damages arising out of a § 1983 claim. See Jefferson v. City of Tarrant, 522 U.S. 75, 75 (1997) ("this Court has ruled that § 1983 plaintiffs may not recover punitive damages against a municipality"); Kentucky v. Graham, 473 U.S. 159, 167 n.13 (1985) ("punitive damages are not available under § 1983 from a municipality").

Although § 1983 does not permit punitive damages against a municipality, punitive damages are available against an official individually. See Kentucky, 473 U.S. at 167 n.13. Thus, this court GRANTS summary judgment for punitive damages against the City.

## VI. CONCLUSION.

For the foregoing reasons, the City's motion for summary judgment is granted in part and denied in part. Summary judgment is granted in the City's favor on all claims except the respondeat superior claim. The claims against the individual officer Defendants were not the subject of this motion and also remain for further adjudication. All original nine counts from the Complaint remain against individually named Defendants Andy Lazano and Preston Pacheco.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, July 26, 2011



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

McCormack v. City & County of Honolulu, Civ. No. 10-00293 SOM/KSC; ORDER GRANTING IN PART, DENYING IN PART DEFENDANT CITY AND COUNTY'S MOTION FOR SUMMARY JUDGMENT.